UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ASHLEY M. o/b/o J.J.,[1] | : | Case No. 3:24-cv-242 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[2]**

Plaintiff Ashley M., acting on behalf of J.J., a minor, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (Commissioner) denying J.J.'s application for Supplemental Security Income (SSI). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #14), and the administrative record. (Doc. #7).

**I.     Background**

To qualify for SSI as a child under the age of eighteen, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of eighteen is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
>> (1) Acquiring and using information;
>> (2) Attending and completing tasks;
>> (3) Interacting and relating with others;
>> (4) Moving about and manipulating objects;
>> (5) Caring for yourself; and
>> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results:

> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

Plaintiff, who is J.J.'s mother and legal guardian, filed the current[3] application for SSI on J.J.'s behalf on February 25, 2022, alleging disability commencing August 1, 2019, due to several impairments, including: "autism, a learning disability, chronic motor tics, and anxiety." (Doc. #7-5, *PageID* #s 216-22). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Stuart Adkins on November 20, 2023. Thereafter, the ALJ issued a written decision, addressing the sequential evaluation process under the child disability standards. *See* 20 C.F.R. § 416.924. He reached the following main conclusions:

1. J.J. was born in 2013. Therefore, he was a school-age child on February 25, 2022, the date application was filed, and is currently a school-age child.

2. J.J. has not engaged in substantial gainful activity since February 25, 2022, the application date.

3. J.J. has the following severe impairments: autism spectrum disorder, an anxiety disorder, a tic disorder, a learning disorder, attention deficit

---

[3] An application for benefits was previously filed on J.J.'s behalf on September 20, 2019, and ALJ Kevin R. Barnes issued a decision on March 11, 2021, finding that J.J. was not disabled. (Doc. #7-2, *PageID* #34); (Doc. #7-3, *PageID* #s 81-96).

      hyperactivity disorder (ADHD), insomnia, and obsessive-compulsive disorder.

4.      J.J. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      J.J. does not have an impairment or combination of impairments that functionally equals the severity of the listings.

In determining that J.J.'s impairments were not functionally equivalent to a listed impairment, the ALJ found:

- <u>less than a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;
- <u>less than a marked</u> limitation in interacting and relating with others;
- <u>less than a marked</u> limitation in moving about and manipulating objects;
- <u>less than a marked</u> limitation in the ability to care for himself; and
- <u>no</u> limitation in health and physical well-being.

(Doc. #7-2, *PageID* #s 35-51). Based on these findings, the ALJ concluded that J.J. has not been disabled, as defined in the Social Security Act, since February 25, 2022, the date the application was filed. *Id.* at 51.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 34-51), Plaintiff's Statement of Errors (Doc. #11), and the Commissioner's Memorandum in Opposition (Doc. #14). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.   <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th

4

Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In her Statement of Errors, Plaintiff asserts that: (1) the ALJ erred in his assessment of the opinions of the state agency medical advisors; (2) the ALJ erred in finding that J.J. had less than marked limitations in the following domains: understanding, remembering or applying information; interacting with others; and, adapting and managing oneself; and (3) the ALJ erred by failing to comply with SSR 16-3p when evaluating the severity of the J.J.'s symptoms. (Doc. #11, *PageID* #s 1174-88). In response, the Commissioner maintains that the ALJ properly evaluated the prior administrative medical findings in accordance with the regulations, thoroughly evaluated the evidence regarding J.J.'s mental impairments, and properly concluded that his

5

impairments did not equal a listing and that his functional limitations were no more than moderate in any domain. (Doc. #14, *PageID* #s 1202-12). Additionally, the Commissioner asserts that the ALJ properly evaluated J.J.'s subjective symptoms in accordance with the regulations. *Id*. at 1212-14.

    A.    **Evaluation of State Agency Psychologists' Opinions**

In her Statement of Errors, Plaintiff argues that the ALJ erred in his analysis of the state agency psychologists' opinions by failing to address the supportability factor for either opinion, "depriv[ing] subsequent reviewers of the ability to engage in a meaningful review of his decision." (Doc. #11, *PageID* #s 1175-76).

Since J.J.'s application for benefits was filed after March 27, 2017, it is governed by the regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other

6

evidence in the claim or an understanding of [the Social Security Administration's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

While these regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [his] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of

articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

State agency psychologists, Irma Johnston, M.D., and Karla Delcour, M.D., reviewed Plaintiff's record in June 2022 and October 2022, respectively. (Doc. #7-3, *PageID* #s 99-103, 106-09). Drs. Johnston and Delcour adopted the functional equivalency findings from the prior ALJ's decision pursuant to AR 98-4(6). *Id.* at 102, 108. Specifically, they found that J.J. had no limitation in health and physical well-being and less than marked limitations in the remaining functional domains. (Doc. #7-3, *PageID* #s 100-03, 106-09).

The ALJ found the prior administrative medical findings of the state agency psychologists to be "persuasive." (Doc. #7-2, *PageID* #49). The ALJ reasoned:

> The opinions of Drs. Johnston and Delcour are generally supported and consistent with the record (Exhibits B1F-B14F). [J.J.]'s ability to do well in school, as discussed above, is consistent with less than marked limitations in acquiring and using information and in attending to and completing tasks (e.g. Exhibits B2F/60, 74; B10F/1; B11F/17; B12F/5). Therapy notes indicate that he had some friends at school, and he was able to go to the COSI museum and skating on class trips, go swimming in crowded public pools, go shopping at Walmart and the mall, and go out to eat at restaurants, including Scene 75, supporting a less than marked limitation in interacting and relating to others (e.g. Exhibits B2F/6; B3F/41-42; B7F/18, 22, 42, 46, 59, 63, 75, 104; B10F/1, 9; B14F/23, 52). Those activities, along with his ability to function in class with accommodations, supports the less than marked limitation in caring for himself. The record reflects few physical complaints beyond tics and concerns about his handwriting, demonstrating less than marked limitations in moving about and manipulating objects with no limitation with respect to health and physical well-being (Exhibits B1E, B1F-B14F). Additionally, the opinions of his small group teachers are consistent with the opinions of Drs. Johnston and Delcour (Exhibit B14E).

*Id.*

Plaintiff asserts that this analysis does not sufficiently develop the supportability factor, as the ALJ "did not look to see what objective medical evidence was cited, and he did not consider

8

any supporting explanations provided by the reviewing psychologists." (Doc. #11, *PageID* #s 1175-76). For the following reasons, the undersigned **RECOMMENDS** sustaining Plaintiff's Statement of Errors.

Upon review of the record, the ALJ did not properly consider the supportability factor as mandated by 20 C.F.R. § 416.920c(b)(2) in his analysis of Dr. Johnston's and Dr. Delcour's opinions. (Doc. #7-2, *PageID* #49); see *John F. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00260, 2023 WL 4759127, at *6-7 (S.D. Ohio July 26, 2023) (Gentry, M.J.) (remanding when the ALJ "did not explain his consideration of the supportability factor" when he did not cite to state agency consultants' "explanations or the evidence they reviewed."). Although the ALJ stated that their opinions were persuasive because they were "generally supported by the record," he cited to the entire medical record, including records that Dr. Johnston and Dr. Delcour did not review. *Id*.; (Doc. #7-3, *PageID* #s 99, 104, 106, 110). Therefore, Dr. Johnston and Dr. Delcour could not have relied on treatment records and an updated individual education plan from December 2022 to November 2023 as support for their opinions, which the ALJ cited as support for his finding their opinions persuasive. (Doc. #7-2, *PageID* #49) (citing Doc. #7-7, *PageID* #s 808-15; Doc. #7-8, *PageID* #s 817-963; Doc. #7-9, *PageID* #s 965-88; Doc. #7-10, *PageID* #s 1078-157). Thus, the ALJ failed to sufficiently explain how evidence Dr. Johnston's and Dr. Delcour's did not review supported their opinions. *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be.") (emphasis added).

Furthermore, the ALJ failed to address the inconsistencies between his findings and those of Dr. Johnston's and Dr. Delcour's. (Doc. #7-2, *PageID* #49). Both psychologists adopted the prior ALJ's decision and findings under Security Administration's Acquiescence Ruling (AR) 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 187 (6th Cir. 1997) (Doc. #7-3, *PageID* #s 101-02, 104, 107-08, 110). The ALJ specifically noted that Dr. Johnston and Dr. Delcour "adopted the prior ALJ's functional equivalency findings from the prior decision pursuant to AR 98-4(6)" because they found "no change in [J.J.'s] condition since the prior decision." (Doc. #7-2, *PageID* #49). However, the ALJ found that "[J.J.] has produced new and material evidence documenting a significant change in [his] condition due to a change in diagnoses. Thus, Judge Barnes's previous findings are not binding." *Id*. at 34. Despite the ALJ's conclusion that there was a significant change in J.J.'s condition, he did not reconcile that conclusion with Dr. Johnston's and Dr. Delcour's opinions that J.J.'s condition had not changed.

Additionally, Dr. Johnston's and Dr. Delcour's opinions adopted the prior ALJ's severe and non-severe impairments, including the finding of depressive disorder to be a severe impairment, and autism, insomnia, obsessive-compulsive disorder, and chronic motor tic disorder to be non-severe impairments. (Doc. #7-3, *PageID* #s 101, 107). The ALJ did not include depressive disorder to be an impairment in his decision, much less a severe impairment, and did find autism spectrum disorder, insomnia, obsessive-compulsive disorder, and a tic disorder to be severe impairments. (Doc. #7-2, *PageID* #35). While the ALJ may have permissibly reached a different conclusion with his assessment of the full record, he was mandated to sufficiently explain how he could find opinions persuasive and supported when they seemingly conflict with his

10

findings. *Linda A. v. Comm'r of Soc. Sec.*, No. 3:23-CV-208, 2024 WL 242504, at *7-9 (S.D. Ohio Jan. 23, 2024) (Jolson, M.J.), *report and recommendation adopted sub nom.*, No. 3:23-CV-208, 2024 WL 4227221 (S.D. Ohio Sept. 18, 2024) (Newman, D.J.) (affirming when the ALJ found the state agency physicians' opinions "partially persuasive" and explained with citation to the new records when their adoption of the prior ALJ's findings did not reconcile with the ALJ's finding of greater limitations). Therefore, the ALJ's failure to explain the inconsistency constitutes error.

Although the Commissioner ostensibly argues that the ALJ gave a sufficient supportability and consistency analysis, the ALJ's analysis is limited to the consistency factor, as it points to other medical and non-medical sources in relation to Dr. Johnston's and Dr. Delcour's opinions. (Doc. #14, *PageID* #s 1204-05). However, a consistency analysis is not interchangeable with a supportability analysis to satisfy 20 C.F.R. § 416.920c(b)(2). *See Brian K. v. Comm'r of Soc. Sec.*, No. 3:23-CV-32, 2023 WL 8594340, at *11 (S.D. Ohio Dec. 12, 2023) (Litkovitz, M.J.) (citing *Elaine S. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-240, 2023 WL 6290070, at *3 (S.D. Ohio Sept. 27, 2023) (Newman, D.J.).

Moreover, the ALJ, as part of his consistency analysis, found "the opinions of [J.J.'s] small group teachers are consistent with the opinions of Drs. Johnston and Delcour." (Doc. #7-2, *PageID* #49) (citation omitted). The ALJ did not explain how the small group teachers' opinions were consistent with the opinions of Drs. Johnston and Delcour; this lack of explanation is relevant when the small group teachers opined that, while J.J. receives small group support to complete work in reading and writing instruction, "[h]e is able to complete some but not all of the work with these supports." (Doc. #7-6, *PageID* #303). Additionally, the small group teachers related that in

11

math, although J.J. "does better with the whole group and [is] excellent in class discussions . . . he has difficulty applying what he knows during independent work, like tests." *Id*. Finally, while the small group teachers noted that "[J.J.] is doing better this year with staying in class … he can get overwhelmed and begin crying when he feels frustrated or completely shut down instead of asking for help." *Id*. at 304. J.J.'s difficulties in several subject areas, as observed by the teachers, seemingly conflict with Dr. Johnston's and Dr. Delcour's findings that "IEP notes [J.J.] is academically about 75% of peers and excels at doing homework and class assignments." (Doc. #7-3, *PageID* #s 103, 109). Although the ALJ could have reconciled these inconsistencies with further explanation, he did not, leaving the undersigned unable to trace the ALJ's rationale. Therefore, for all the above reasons, the undersigned recommends remand in this case.[4]

### B. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

---

[4] In light of the above discussion, and the resulting recommendation to remand this case, an in-depth analysis of Plaintiff's other challenge to the ALJ's decision is unwarranted.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate J.J.'s disability claim under the required five-step sequential analysis to determine anew whether J.J. was under a disability and whether his application for SSI should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. #11) be **SUSTAINED;**

2. The Commissioner's non-disability finding be vacated;

3. No finding be made as to whether J.J. was under a "disability" within the meaning of the Social Security Act;

4. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case be terminated on the Court's docket.

July 31, 2025

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).